UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                       :
PAOLO ERCOLANI and                     :
PAOLA AIELLO,                          :   15 Civ. 4654
                                       :
            Plaintiffs,                :
                                       :
      v.                               :   **COMPLAINT**
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
            Defendant.                 :
------------------------------------- X

Plaintiffs Paolo Ercolani and Paola Aiello (collectively, "Plaintiffs"), by their attorneys McDermott Will & Emery LLP, as and for their Complaint against Defendant Republic of Argentina ("Argentina"), allege as follows:

## NATURE OF THE ACTION

1. This is a breach of contract action based on certain bonds issued by Argentina and held jointly by Plaintiffs (the "Bonds", as defined below). The Bonds were issued pursuant to a Fiscal Agency Agreement, dated October 19, 1994 (the "FAA") between Argentina and Bankers Trust Company, as Fiscal Agent.

2. Plaintiffs seek specific performance of Argentina's payment obligations pursuant to the Equal Treatment Provision contained in paragraph 1(c) of the FAA, which provides for equal treatment in terms of rank and priority of payment for holders of bonds issued pursuant to the FAA with respect to any unsecured and unsubordinated External Indebtedness, as defined in the FAA (the "Equal Treatment Provision").

## RELEVANT EQUAL TREATMENT PROVISION ACTIONS AGAINST ARGENTINA (THE NML ACTIONS)

3. Beginning in 2005 and continuing to the present day, Argentina has engaged in a course of conduct that violates the Equal Treatment Provision. Argentina held bond exchanges in 2005 and 2010 in connection with which it issued bonds (the "Exchange Bonds") with payment obligations that rank higher in order of payment than those issued under the FAA, including the Bonds. These Exchange Bonds meet the definition of "External Indebtedness" in the FAA. Argentina's issuance of these higher ranking bonds, facilitated by Law 26,017 passed in 2005, and Law 26,547 passed in 2009, and its payment and attempted payment of interest to the holders of the Exchange Bonds as such interest becomes due—while paying nothing to Plaintiffs and other bondholders who did not participate in the 2005 or 2010 exchanges—violates the Equal Treatment Provision of the FAA.

4. Law 26,017 provides, among other things, that the "national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds" held by Plaintiffs.

5. Law 26,547 provides, among other things, that the "Republic of Argentina . . . is forbidden to offer to the holders of public debt [including those issued pursuant to the FAA] that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding [to enforce their rights], treatment more favorable than the treatment afforded to holders who did not bring such proceedings."

6. As a result, in October 2010, NML Capital, Ltd. ("NML") sought specific performance of the Equal Treatment Provision in three pre-judgment cases:

*NML Capital, Ltd v. The Republic of Argentina*, 08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708 (the "Pre-judgment Cases").

7. On February 23, 2012, this Court issued an injunction to remedy Argentina's continuing violations of the Equal Treatment Provision, which required Argentina to pay NML ratably on certain of NML's bonds whenever it makes any payment to the holders of the Exchange Bonds ("February 23, 2012 Order").

8. On October 26, 2012 the Second Circuit affirmed the Court's February 23, 2012 Order, but remanded the injunction for clarification. *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Oct. 26, 2012) (ECF No. 442).

9. Although the Second Circuit's judgment was not final, Argentina petitioned for a writ of certiorari to the United States Supreme Court. The petition was denied on October 7, 2013. *Republic of Argentina v. NML Capital, Ltd.*, et al., No. 12-1494 (S. Ct. Oct. 7, 2013).

10. This Court amended the February 23, 2012 Order on November 21, 2012.

11. In response to the Orders of the Court and the affirmances of the Second Circuit Court of Appeals in NML's Pre-judgment Cases, Argentine officials, including President Kirchner, have repeatedly stated that Argentina has no intention of ever paying NML and other like bondholders.

12. For example, in November 2012, after the Second Circuit affirmed the February 23, 2012 Order and remanded the injunction for clarification, President Kirchner stated that Argentina was going to pay the Exchange Bonds, but "not one dollar to the 'vulture funds.'"

3

13. During the oral argument of the appeal from the Court's Amended February 23 Order, Argentina's counsel told the Second Circuit that Argentina would not voluntarily obey any order requiring ratable payment to NML or other like bondholders.

14. On August 23, 2013, the Second Circuit affirmed the Amended February 23 Order. *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Aug. 23, 2012) (ECF No. 1001).

15. Shortly thereafter, President Kirchner announced that Argentina would offer a new bond exchange that would replace the Exchange Bonds with new bonds governed by Argentine law and payable in Argentina. This plan to evade the rulings of United States courts evidences Argentina's continuing intention not to fulfill its obligations pursuant to the Equal Treatment Provision.

16. Argentina filed another petition for a writ of certiorari, seeking review by the Supreme Court of the Second Circuit's affirmance of the Amended February 23 Order. That petition was also denied. *Exchange Bondholder Group v. NML Capital, Ltd., et al.*, No. 13-991 (S. Ct. June 16, 2014).

17. After this second petition for writ of certiorari was denied, Argentina's Economy Minister Axel Kicillof announced a plan—nearly identical to the plan announced in August 2013 by President Kirchner—to evade the Court's Amended February 23 Order by swapping the Exchange Bonds for new bonds payable in Argentina and outside the Court's reach.

18. On June 20, 2014, the Court promptly issued an order ruling that Minister Kicillof's proposed bond swap was in violation of the Court's orders.

4

19. Six days later, on June 26, 2014, Argentina attempted to initiate payment to certain holders of Exchange Bonds by transmitting funds to Bank of New York Mellon ("BNY"), as trustee, without making ratable payment to NML or other like bondholders, including Plaintiffs.

20. On August 6, 2014, the Court issued an Order finding that the June 26, 2014 payment by Argentina to BNY was illegal and in violation of the Court's previous Orders.

21. Argentina's President Kirchner subsequently announced that Argentina would enact legislation to change the manner in which it makes payments on the Exchange Bonds, such that BNY would be removed as trustee for certain Exchange Bonds, and all Exchange Bonds would be paid from a single account in Argentina through a financial institution called *Nación Fideicomisos's* that Argentina controls. Argentina has taken steps to carry out this illegal plan. These actions are yet another attempt by Argentina to evade the rulings of the Court in violation of the Amended February 23 Orders, and to flout its obligations under the Equal Treatment Provision.

22. As a result of these flagrant and unlawful activities, NML moved by order to show cause to hold Argentina in civil contempt of court. On September 29, 2014, the Court issued an Order holding Argentina in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental Order regarding Argentina's civil contempt.

23. On September 30, 2014, Argentina purported to initiate an interest payment to certain holders of Exchange Bonds by transmitting funds to Nacion Fidecomiesos, S.A., a subsidiary of Argentina's wholly-owned bank, Banco de la Nacion

5

Argentina, without making a ratable payment to NML and other like bondholders, including Plaintiffs.

24. Accordingly, Plaintiffs now seek specific performance of the Equal Treatment Provision with respect to its beneficial holdings of bonds issued pursuant to the FAA as to which Plaintiffs have been awarded money judgments.

## THE PARTIES

25. Plaintiffs Paolo Ercolani and Paolo Aiello are residents of Italy.

26. Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603.

## JURISDICTION AND VENUE

27. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330, as Argentina is a Foreign State which has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of the FAA by holders of bonds issued thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

28. In addition, Argentina consented in the FAA to submit to the jurisdiction of this Court in respect to actions arising out of the FAA or bonds issued thereunder. Pursuant to Section 22 of the FAA, Argentina appointed Banco de la Nación Argentina, 299 Park Avenue, New York, New York, 10171, as its authorized agent for service of process. Paragraph 23 of the FAA provides that the FAA shall be "governed by, and interpreted in accordance with, the laws of the State of New York."

29. Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

6

## FACTUAL ALLEGATIONS

### Plaintiffs' Action Against Argentina for Payment of Principal and Interest

30. Plaintiffs are joint holders of $631,000 principal amount of 11% Global Bonds, due September 10, 2006, issued by Argentina, ISIN No. 040114AN02 (the "Bonds").

31. The Bonds are a Series of Securities under the terms of the FAA.

32. In 2006, Plaintiffs (together with other plaintiffs not party to this action) brought an action against Argentina in this Court based on Argentina's failure to pay principal and interest on the Bonds. *Beltramo et al. v. The Republic of Argentina*, 06 CV 7151, was filed on September 18, 2006.

33. Final Judgment in the amount of $631,000, plus pre- and post-judgment interest, was entered on September 11, 2008, as amended on January 9, 2014, in favor of Plaintiffs.

34. Argentina has made no voluntary payment to Plaintiffs in connection with any of the Bonds.

### The Republic of Argentina's Violations of the Equal Treatment Provision

35. The FAA contains an Equal Treatment Provision that states:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic . . . . **The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).**

36. According to its plain language, the Equal Treatment Provision prohibits Argentina from making or attempting to make a payment to a holder of External Indebtedness without making a ratable payment to Plaintiffs on the Bonds.

7

37. In 2001, Argentina declared a moratorium (the "Moratorium") on the bonds governed by the FAA (as well as on other bonds).

38. Argentina has passed legislation each year renewing the Moratorium.

39. In 2005, Argentina attempted to restructure its defaulted debt by offering a bond exchange to all holders of non-performing bonds, including the bonds governed by the FAA (the "2005 Exchange").

40. The Prospectus for the 2005 Exchange stated:

> Existing defaulted bonds eligible for exchange that are not tendered may remain in default indefinitely. . . . The Government has announced that it has no intention of resuming payment on any bonds eligible to participate in [the] exchange offer. . . . that are not tendered or otherwise restructured as part of such transaction. Consequently, if you elect not to tender your bonds in an exchange offer there can be no assurance that you will receive any future payments in respect to your bonds.

41. Holders of approximately 25% of Argentina's non-performing bonds did not participate in the 2005 Exchange.

42. Plaintiffs did not participate in the 2005 Exchange.

43. In 2005, Argentina began making semi-annual interest payments to holders of bonds issued in the 2005 Exchange (such bonds, the "2005 Exchange Bonds," and such holders, the "2005 Exchange Bondholders").

44. Argentina paid all subsequent interest due on the 2005 Exchange Bonds until the payment that came due on June 30, 2014. On June 26, 2014 Argentina attempted to initiate payment to certain holders of 2005 Exchange Bonds by transmitting funds to the BNY as trustee. By reason of Orders issued by the Court, BNY did not further transmit these funds to holders of the 2005 Exchange Bonds. *NML Capital, Ltd v.*

*The Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

45. Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2005 Exchange Bonds as it becomes due.

46. To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 (the "Lock Law") on February 9, 2005.

47. In its January 28, 2010 Prospectus, Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law." The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange . . . .**

(emphasis added).

48. Article 1 of the Lock Law provides that bonds not tendered in the 2005 Exchange would be subject to the following provisions:

> a. Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.
>
> b. Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.
>
> c. Article 4 - The national Executive Power must— within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions—

9

>order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

49. Argentina violated the Equal Treatment Provision of the FAA by lowering the rank of its payment obligations under the Bonds below that of other unsecured and unsubordinated External Indebtedness by relegating the Bonds to a non-paying class pursuant to the Lock Law.

50. In 2009, in preparation for a new bond exchange that took place in 2010 (the "2010 Exchange"), the Argentine Senate and Chamber of Deputies passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange.

51. Law 26,547 provides:

>a. Article 1. The operation of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.
>
>b. Article 3. The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.
>
>c. Article 5. It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

52. The prospectus for Argentina's 2010 Exchange stated:

> Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely. In light of its financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation.* Argentina has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . . and other legal proceedings against Argentina. Argentina remains subject to significant legal constraints regarding its defaulted debt. . . .
> Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

53. Plaintiffs did not participate in the 2010 Exchange (Plaintiffs and other Argentine bondholders that participated in neither the 2005 Exchange nor the 2010 Exchange, the "Non-tendering Bondholders").

54. Argentine courts have held that the Lock Law and the Moratorium prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

55. Argentina violated the Equal Treatment Provision of the FAA by relegating the Bonds to a non-paying class pursuant to Law 26,517.

56. In 2010, Argentina began making semi-annual interest payments to holders of bonds issued in the 2010 Exchange (such bonds, the "2010 Exchange Bonds," and such holders, the "2010 Exchange Bondholders.")

57. Argentina paid all interest due on the 2010 Exchange Bonds until the payment due on June 30, 2014. On June 26, 2014, Argentina attempted to initiate payment to certain holders of 2010 Exchange Bonds by transmitting funds to BNY as trustee. By reason of orders issued by this Court, BNY did not further transmit those

funds to holders of the 2010 Exchange Bonds. *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

58.   Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2010 Exchange Bonds as it becomes due.

59.   Upon information and belief, without an order of this Court, Argentina will continue to pay or attempting to pay the 2005 and 2010 Exchange Bondholders while paying nothing to Plaintiffs in violation of the Equal Treatment Provision.

60.   Plaintiffs have been damaged as a result of Argentina's violations and will continue to be damaged by the continuing violations of the Equal Treatment Provision.

61.   In Orders issued in NML's three Pre-judgment Cases, the Court:

    a.   held that Argentina's actions, as described in paragraphs 57–80, *supra*, violated the Equal Treatment Provision;

    b.   granted partial summary judgment to NML on claims for specific performance of the Equal Treatment Provision;

    c.   held that NML had no adequate remedy at law and that, absent equitable relief, NML would suffer irreparable harm;

    d.   held that the equities strongly supported injunctive relief;

    e.   held that Argentina had the financial wherewithal to meet its payment obligations to NML in those cases;

    f.   required Argentina to specifically perform its obligations under the Equal Treatment Provision by making ratable payment to NML

whenever it paid the 2005 and 2010 Exchange Bondholders the amounts due on their bonds; and

    g.  held that the Equal Treatment Provision applies to holdings of FAA bonds that have been reduced to money judgments.

  62. In its December 7, 2011 Order, the Court specifically held that Argentina's Equal Treatment obligations applied to judgments:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

Therefore, relief identical to that granted to NML in the Pre-judgment Cases is warranted in Plaintiffs' post-judgment cases.

  63. As a result of the Orders of the Court, the doctrine of issue preclusion (also known as collateral estoppel) bars Argentina from denying that both Argentina's issuance of higher-ranking bonds in the 2005 and 2010 Bond Exchanges and Argentina's continuing payments and attempts to pay the holders of these bonds—while paying nothing to Plaintiffs—constitute violations of the Equal Treatment Provision of the FAA.

## CLAIM FOR RELIEF
(For Specific Enforcement of the Equal Treatment Provision)

  64. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 above.

  65. Pursuant to ¶ 1(c) of the FAA (*i.e.*, the Equal Treatment Provision), Argentina provided that its bonds issued pursuant to the FAA would constitute "direct,

unconditional, unsecured and unsubordinated obligations of the Republic" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

66. Argentina, therefore, may not make any payment or attempt to make any payment on its 2005 and 2010 Exchange Bonds without also making a ratable payment at the same time to Plaintiffs on their beneficial interests in bonds issued pursuant to the FAA.

67. Argentina has engaged in a course of conduct violative of the Equal Treatment Provision.

68. Through the passage of Law 26,017 (i.e. the Lock Law), Argentina issued a new series of bonds with payment obligations that rank higher than those held by Plaintiffs in violation of the Equal Treatment Provision.

69. Through the passage of Law 26,547 Argentina issued a new series of bonds with payment obligations that rank higher than those held by Plaintiffs in violation of the Equal Treatment Provision.

70. The bonds issued in the 2005 Exchange and the 2010 Exchange are External Indebtedness.

71. Argentina's legislative actions forbidding payment on non-tendered bonds violate the Equal Treatment Provision.

72. Argentina's past payments of interest to 2005 Exchange Bondholders, while paying nothing to Plaintiffs, violated the Equal Treatment Provision.

73. Argentina's continuing payments and attempts to pay interest to 2005 Exchange Bondholders without ratable payment to Plaintiffs will be further and continuing violations of the Equal Treatment Provision.

74. Argentina's past payments of the scheduled interest to 2010 Exchange Bondholders, while paying nothing to Plaintiffs, violated the Equal Treatment Provision.

75. Argentina's continuing payments of interest and attempts to pay interest to 2010 Exchange Bondholders without ratable payment to Plaintiffs will be further and continuing violations of the Equal Treatment Provision.

76. Plaintiffs have suffered irreparable injury from Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces the Equal Treatment Provision with a mandatory injunction requiring Argentina to pay Plaintiffs ratably whenever it pays interest or attempts to pay interest to 2005 or 2010 Exchange Bondholders.

77. Remedies available at law are inadequate to compensate Plaintiffs for such injury.

78. Plaintiffs have performed their part of their contracts with Argentina.

79. Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

80. The balance of the equities tips toward the issuance of an injunction.

81. The public interest would not be disserved by a permanent injunction.

WHEREFORE, Plaintiffs demand judgment against the Republic of Argentina, as follows:

    a.    An Order specifically enforcing the Equal Treatment Provision, by requiring ratable payment to Plaintiffs whenever Argentina makes or attempts to make payments on the 2005 and 2010 Exchange Bonds.

    b.    Awarding Plaintiffs their costs, attorneys' fees and such other and further relief as the Court shall deem just and proper.

Dated: June 16, 2015
       New York, New York

McDERMOTT WILL & EMERY LLP

By: _____
   Banks Brown
   Audrey Lu
   340 Madison Ave.
   New York, NY 10173
   (212) 547-5400

*Attorneys for Plaintiffs Paolo Ercolani and Paola Aiello*

DM_US 61425818-1.072865.0015